## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| HOSPITAL PARTNERS OF AMERICA, INC. et al.,[1] | Case No.:  08-12180 (BLS) |
| Debtors. | (Jointly Administered) |

### DEBTORS' FIRST OMNIBUS MOTION FOR THE ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO REJECT CERTAIN EXECUTORY CONTRACTS PURSUANT TO 11 U.S.C. § 365

Hospital Partners of America, Inc. ("HPA") and its chapter 11 affiliates, debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby move (the "Motion") for entry of an order pursuant to 11 U.S.C. § 365 authorizing the Debtors to reject certain executory contracts.  A proposed order approving the Motion is attached hereto.  In support of this Motion, the Debtors state as follows:

### Status of Case and Jurisdiction

1.      On September 24, 2008 (the "Petition Date"), the Debtors commenced these cases by each filing a voluntary petition for relief under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

---

[1] The Debtors comprise the following entities: Hospital Partners of America, Inc., a Delaware corporation (Fed. EIN 56-2301189), SJ Medical Center Management, LLC, a Texas limited liability company (Fed. EIN 20-4835598), Surgical Hospital of Austin Management, Inc., a Delaware corporation (Fed. EIN 01-0719812), Austin Surgical Hospital Holdings, Inc., a Delaware corporation (Fed. EIN 01-0719774), and Trinity MC Management, LLC, a Texas limited liability company (Fed. EIN 20-8889391).  The address for the Debtors is 2815 Coliseum Centre Drive, Suite 150, Charlotte, North Carolina 28217.

2.      The Debtors have continued in the possession of their property and are operating and managing their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request for a trustee or examiner has been made and no creditors' committee has been appointed in these cases.

4.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O).

5.      Venue of these proceedings and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicates for the relief sought herein are section 365(a) of the Bankruptcy Code and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

7.      The detailed factual background relating to the Debtors and the commencement of these chapter 11 cases is set forth in the *Declaration of W. Christopher Shea in Support of First Day Motions*.

8.      The Debtors directly and indirectly hold majority equity positions in, and provide certain management services to, four hospitals located in California and Texas (the "Operating Hospitals").   The minority equity interests in the Operating Hospitals are held directly or indirectly by physician investors.   HPA and the other Debtors are guarantors of virtually all of the major funded debt of the Operating Hospitals.

2

9.    None of the Operating Hospitals is a debtor in these cases. However, HPA is the corporate parent of River Oaks Holdings, Inc. ("River Oaks Holdings"), holder of a substantial equity position in River Oaks Medical Center, L.P. ("River Oaks Partnership"). Both River Oaks Holdings and River Oaks Partnership are debtors in possession in cases pending before this Court.

10.    HPA currently employs 17 individuals, all but one of whom work at the Debtors' headquarters in Charlotte, North Carolina. (The other Debtors have no employees.) Pursuant to a series of management agreements, HPA's employees provide management and support services to the personnel of the non-Debtor Operating Hospitals, including services relating to human resources, financial, legal, regulatory and information technology matters. HPA personnel also provide management services to a fifth hospital in which HPA has no direct or indirect ownership interest.

11.    As a result of substantial losses at the River Oaks Medical Center and several of the Operating Hospitals, and as a result of the Debtors' direct and indirect funding of those losses over time, the Debtors have been experiencing their own liquidity issues.

12.    Prior to the Petition Date, the Debtors began an effort to address their financial difficulties and those of the Operating Hospitals by initiating a marketing process, with the objective of either selling their interests in the Operating Hospitals or arranging the sale of the Operating Hospitals themselves. Unfortunately, the Debtors were not able to facilitate any of these potential transactions before the cash available to fund their own operations reached a critically low level.

3

13.     The Debtors have each filed a voluntary petition for relief under chapter 11 for the purpose of preserving and maximizing the value of the property of the estates (including the Debtors' interests in the Operating Hospitals), allowing the marketing and sale efforts that are underway to continue, facilitating a smooth transition to new ownership and management, and minimizing the claims against the Debtors' estates (most of which comprise guarantees of liabilities as to which an Operating Hospital is the primary obligor).

14.     HPA's largest equity holder, New Enterprise Associates 10, Limited Partnership ("NEA") agreed to provide the Debtors with certain debtor in possession financing (the "DIP Facility") in order to achieve these objectives in chapter 11.

## The Requested Relief

15.     The Debtors have determined that they have no need for certain executory contracts and, in order to avoid incurring any possible administrative expense with respect to those contracts, hereby seek to reject those executory contracts.

16.     Through this Motion, the Debtors seek the entry of an order, pursuant to section 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006, authorizing and approving the Debtors' rejection of the executory contracts (the "Contracts"), effective as of the filing date of the Motion.  The Contracts are listed on the attached **Exhibit A.** [2]

---

[2]Specifically, and notwithstanding the relief requested herein, the Debtors reserve the right to argue that the Contracts are not executory contracts or unexpired personal property leases within the meaning of section 365 of the Bankruptcy Code in connection with any objection to any claim that may be asserted.  Exhibit A includes contracts that may have terminated or expired by their terms have been included in this Motion out of an abundance of caution  Moreover, in the event there is a determination that the Contracts are not executory contracts or unexpired personal property leases, the Debtors reserve the right to argue that the property subject to the Contracts was abandoned effective as of the date the Contracts would have otherwise been deemed rejected.

4

17.    By service of this Motion, the Debtors have notified the counterparties (collectively, the "Counterparties") to the Contracts of their intention to reject the Contracts.

18.    **PARTIES RECEIVING THIS MOTION SHOULD REVIEW <u>EXHIBIT A</u> TO LOCATE THEIR NAMES AND THEIR CONTRACTS OR LEASES.**

<strong><u>The Basis for Relief</u></strong>

19.    By this Motion, the Debtors seek to reject the Contracts listed on **<u>Exhibit A</u>** *nunc pro tunc* to the date of this Motion.  Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. <u>See</u> <u>Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.</u>, 318 U.S. 523, 550 (1943) ("[T]he question whether a lease should be rejected . . . is one of business judgment."); <u>N.L.R.B. v. Bildisco & Bildisco (In re Bildisco & Bildisco)</u>, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); <u>see also</u> <u>In re Taylor</u>, 913 F.2d 102 (3d Cir. 1990); <u>In re Federal Mogul Global, Inc.</u>, 293 B.R. 124, 126 (D. Del. 2003); <u>In re HQ Global Holdings</u>, 290 B.R. 507, 511 (Bankr. D. Del. 2003); <u>In re Buckhead America Corp.</u>, 180 B.R. 83 (D. Del. 1995).  The business judgment standard mandates that a court approve a debtor's business decision unless the decision is the product of bad faith, whim or caprice.  <u>See</u> <u>In re TWA,</u> 261 B.R. 103, 121 (Bankr. D. Del. 2001); <u>see also</u> <u>In re Summit Land Co.</u>, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstances, court approval of a debtor's

decision to assume or reject an executory contract "should be granted as a matter of course").  Further, "[t]his provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." Stewart Title Guar. Co. v. Old Republic National Title Co., 83 F.3d 735, 741 (5th Cir. 1996).

20.     Rejection is appropriate based solely on the resultant benefit to the estates.  See HQ Global, 290 B.R. at 511; In re Stable News Assoc., Inc., 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984).  Therefore, the business judgment standard is satisfied when a debtor determines that rejection will benefit the estate.  See In re Child World, Inc., 142 BR. 87, 88-89 (Bankr. S.D.N.Y. 1992); In re TS Indus., Inc., 117 B.R. 682, 685 (Bankr. D. Utah 1990); In re Del Grosso, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990); In re Ionosphere Clubs, Inc., 100 B.R. 670, 674 (Bankr. S.D.N.Y. 1989).

21.     The Debtors, in the exercise of their business judgment, have determined that the Contracts are no longer necessary to the Debtors' business and do not provide any value to the Debtors' estates and their creditors.  In particular, the Debtors have determined that the Contracts are not necessary for the Debtors' future operations and that no value that could be realized from the assumption and assignment of the Contracts.

22.     The Debtors request that the Court approve the rejection of the Contracts effective as of the date of this Motion.  This Court has the authority to enter an order rejecting the Contracts effective as of that date.  A "bankruptcy court has discretion to approve a rejection of a nonresidential lease pursuant to § 365(a) retroactive to the motion filing date, when principles of equity so dictate. . . . Moreover, the court's power to grant retroactive relief is derived from the

bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)." In re Chi-Chi's, Inc., 305 B.R. 396, 399 (Bankr. D. Del. 2004) (citing Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In Re: Thinking Machs. Corp.), 67 F.3d 1021, 1028 (1st Cir. 1995)).

23.     The Debtors also request that the Court establish a bar date for claims arising from the rejected Contracts, with such date being the later of (i) 30 days after entry of the order granting the relief requested herein, or (ii) the bar date for general, unsecured claims.  In such event, the Debtors expressly reserve any and all rights to object to such proofs of claim, including the right to contest any administrative expense.  Further, the Debtors may have claims against the Counterparties arising under, or independently of, the rejected Contracts.  The Debtors do not waive such claims by the filing of this Motion or the rejection of the Contracts.

### Notice

24.     This Motion has been served on (i) the Office of the United States Trustee, (ii) the Debtors' prepetition secured lenders, (iii) NEA, (iv) creditors holding the twenty (20) largest unsecured claims against each of the Debtors as set forth in the lists filed with the Debtors' petitions, (v) the Counterparties, and (vi) those persons who have requested notice pursuant to Rule 2002 of the Bankruptcy Rules.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

25.     No prior request for the relief sought in this Motion has been made to this or any other court.

7

WHEREFORE, the Debtors request entry of an order substantially in the form attached hereto granting this Motion.

DATED: October 7, 2008

> KLEE, TUCHIN, BOGDANOFF & STERN LLP
> Lee R. Bogdanoff (CA Bar No. 119542)
> Michael L. Tuchin (CA Bar No. 150375)
> Martin R. Barash (CA Bar No. 162314)
> 1999 Avenue of the Stars, 39th Floor
> Los Angeles, CA  90067-6049
> Telephone (310) 407-4000
> Facsimile (310) 407-9090
> Email: lbogdanoff@ktbslaw.com
>        mtuchin@ktbslaw.com
>        mbarash@ktbslaw.com
>
>        -and-
>
> PACHULSKI STANG ZIEHL & JONES LLP
>
> Laura Davis Jones (Bar No. 2436)
> Michael R. Seidl (Bar No. 3889)
> Curtis A. Hehn (Bar No. 4264)
> 919 North Market Street, 17th Floor
> P.O. Box 8705
> Wilmington, DE 19899-8705 (Courier 19801)
> Telephone:  (302) 652-4100
> Facsimile:  (302) 652-4400
> E-mail:  ljones@pszjlaw.com
>          mseidl@pszjlaw.com
>          chehn@pszjlaw.com
>
> [Proposed] Counsel for the Debtors and Debtors In
> Possession

8

DOCS_DE:141183.1