# **Exhibit 1**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re

HOSPITAL PARTNERS OF AMERICA, INC., *et al.,*[1]

Debtors.

Chapter 7

Case No. 08-12180 (BLS)

(Jointly Administered)

Related D.I. ___
Objection Date: , 2011 @ .m. ET
Hearing Date: , 2011 @ .m. ET

## ORDER UNDER 11 U.S.C. §§ 105 AND 363 AND RULES 2002, 6004 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) APPROVING BIDDING PROCEDURES, INCLUDING BREAK-UP FEE AND EXPENSE REIMBURSEMENT, AND (II) SCHEDULING BID DEADLINE, AUCTION DATE AND SALE HEARING AND APPROVING NOTICE THEREOF

Upon the motion (the "Motion"), dated [_____] of Alfred T. Giuliano

(the "Trustee"), Chapter 7 Trustee for the Debtors' estates, in the above-captioned chapter 7

cases (the "Cases"), under Sections 105 and 363 of title 11 of the United States Code, 11 U.S.C.

§§ 101, *et seq.* (as hereafter amended, the "Bankruptcy Code"), Rule 6004 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware ("the Local Rules") and Rules 2002, 6004 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") for the entry of: (i) this initial order (the

"Order"), (a) approving the bidding procedures (the "Bidding Procedures"), substantially similar

to the procedures attached to this Order as Exhibit 1, (b) approving the form of notice of the

---

[1] The Debtors comprise the following entities: Hospital Partners of America, Inc., a Delaware corporation (Fed. EIN 56-2301189), SJ Medical Center Management, LLC, a Texas limited liability company (Fed. EIN 20-4835598), Surgical Hospital of Austin Management, Inc., a Delaware corporation (Fed. EIN 01-0719812), Austin Surgical Hospital Holdings, Inc., a Delaware corporation (Fed. EIN 01-0719774), and Trinity MC Management, LLC, a Texas limited liability company (Fed. EIN 20-8889391). The address for the Debtors is 2815 Coliseum Centre Drive, Suite 150, Charlotte, North Carolina 28217.

Bidding Procedures, Auction,[2] sale hearing (the "Sale Hearing") and sale, (c) and granting other related relief; and (ii) the entry of a second order (the "Sale Order"), (a) authorizing the Trustee to enter into the Purchase Agreement, dated as of [          , 2011] (the "Purchase Agreement") to IASIS Healthcare, LLC (the "Proposed Purchaser"), or the bidder submitting the highest or otherwise best offer at the Auction (the "Prevailing Bidder") for the Company Interest set forth in the Purchase Agreement (the "Sale"), and (b) granting other relief related thereto; the Court having reviewed the Motion and scheduled a hearing (the "Procedures Hearing") on the Motion, and the Court having found that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iv) notice of the Motion and this hearing was sufficient under the circumstances; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors' estates and their creditors; and good and sufficient cause having been shown;

AND FURTHER FOUND AND DETERMINED THAT:

A.      Under the circumstances, the notice given by the Trustee of the Motion and the Procedures Hearing constitutes appropriate notice and complies with section 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

B.      The Bidding Procedures in the form attached hereto as Exhibit 1 are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale of the Company Interest.

---

[2] Any terms not defined herein shall have the meanings ascribed to them in the Purchase Agreement and/or the Motion (as defined herein).

C.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

D.    The Trustee, in conjunction with his advisors, has conducted a robust marketing process since the conversion of these Cases to chapter 7 with respect to the Company Interest. The Purchase Agreement represents the highest and best offer that the Trustee has received to date as a result of such marketing efforts. The Trustee's determination that the Purchase Agreement constitutes the highest and best offer for the Company Interest received to date constitutes a valid and sound exercise of the Trustee's business judgment. Further, the bid made by the Proposed Purchaser is reasonably likely to encourage fair and competitive bidding and will be reasonably likely to subject the Proposed Purchaser's offer to a competitive bidding process through the Auction.

E.    The Bidding Procedures are reasonable and appropriate under the circumstances of these Cases.

F.    The Trustee has demonstrated that the payment of the Break-up Fee and Expense Reimbursement to the Proposed Purchaser under the circumstances set forth in the Motion and the Purchase Agreement is supported by a compelling and sound business justification and is in the best interests of the Debtors and their estates under Section 363 of the Bankruptcy Code because, among other things:

> (i)    the Break-up Fee and Expense Reimbursement is the product of arm's length, good faith negotiations between the Trustee and the Proposed Purchaser;
>
> (ii)   the Break-up Fee and Expense Reimbursement is a material component of, and a condition to, the Proposed Purchaser's bid for the Assets;

-3-

(iii) the Break-up Fee and Expense Reimbursement is commensurate with the real and substantial benefit conferred upon the Debtors' estates by the Proposed Purchaser and the bid evidenced by the Purchase Agreement; and

(iv) the amount of the Break-up Fee and Expense Reimbursement is fair and reasonable under the circumstances and designed to maximize the proceeds from the Sale.

G. The Break-up Fee and Expense Reimbursement is an actual, necessary cost and expense of preserving the Debtors' estates under section 503(b) of the Bankruptcy Code, and necessary to induce the Proposed Purchaser to continue to pursue the purchase of the Company Interest.

H. The form and scope of the Notice of Bid Deadline, Auction, and Sale Hearing (as defined below) is reasonably calculated to provide all interested parties with timely and appropriate notice of the Sale, Sale Hearing, Auction, and Bidding Procedures and complies with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable case law.

I. To the extent any of these findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

IT IS HEREBY ORDERED THAT:

1. The Motion (as it pertains to approval of the matters set forth herein) is granted. Any objections to this Order that have not been previously resolved or withdrawn are overruled on the merits. This Order shall be valid, binding and enforceable on all parties in interest and fully effective immediately upon entry.

-4-

2.  The Trustee shall cause to be served, within five (5) business days after issuance of this Order, by first-class mail, postage prepaid, or by electronic mail (i) notice of the Bid Deadline, Auction and Sale Hearing substantially in the form annexed hereto as Exhibit 2 (the "Notice of Bid Deadline, Auction, and Sale Hearing"), (ii) this Order including the Bidding Procedures attached hereto as Exhibit 1 and (iii) the Motion (the Notice of Bid Deadline, Auction, and Sale Hearing, this Order and the Bidding Procedures, the Motion, collectively, the "Sale Package"), upon: (a) all potential buyers previously identified or solicited by the Trustee and/or Stroudwater and any additional parties who have previously expressed an interest to the Trustee or Stroudwater in potentially acquiring the Company Interest, (b) other potentially interested parties identified by the Trustee or his advisors; (c) the Office of the United States Trustee, (d) counsel for the Proposed Purchaser, (e) the Debtors' known creditors, (f) all parties in interest who have requested notice under Bankruptcy Rule 2002, (g) the Notice Parties, (h) all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon any of the Company Interest, (i) all applicable federal, state and local regulatory or taxing authorities or recording offices which are known by the Trustee to have an interest in the relief requested in the Motion, and (j) physician investors holding the remaining interest in the Company. Due to the size and complexity of this matter, only those parties in (a) - (d) and (f) - (j) will be sent the Sale Package. Those parties in (e) will receive only the Notice of Bid Deadline, Auction, and Sale Hearing. Such notice shall be sufficient and appropriate notice of the Sale with respect to known interested parties.

3.  On or before [                , 2011], or as soon as practicable thereafter, the Trustee shall publish a modified publication version of the Notice of Bid Deadline, Auction, and Sale Hearing in *The Wall Street Journal* (National Edition). Such publication notice shall be

-5-

sufficient and appropriate notice to any other interested parties whose identities are unknown to the Trustee.

## BIDDING PROCEDURES AND AUCTION

4. The Bidding Procedures, annexed hereto as Exhibit 1, are incorporated herein by reference and are approved and shall govern the qualification of bidders, the submission, content and qualification of all Qualified Bids and bidding procedures relating to the Auction of the Company Interest. The Bidding Procedures are necessary and reasonable under the circumstances of these Cases, were negotiated at arm's length and in good faith, are intended and are likely to preserve and enhance the value of the Debtors' estates and are approved in their entirety.

5. Subject to the terms and conditions set forth in the Bidding Procedures, the Trustee is hereby authorized and directed to (a) solicit any person to become a Potential Bidder, (b) permit any person or entity to conduct a due diligence investigation in connection with the Sale, (c) determine whether a bid timely submitted by a Potential Bidder is a Qualified Bid, (d) if one or more Qualified Bids is timely submitted in addition to the Qualified Bid submitted by the Proposed Purchaser, conduct an Auction, (e) at the conclusion of such Auction, designate the highest or otherwise best offer as the Prevailing Bidder and (f) seek Bankruptcy Court approval at the Sale Hearing of (i) if there was no Auction held, the Purchase Agreement and the transactions contemplated thereby with the Proposed Purchaser, or (ii) if there was an Auction held, the Prevailing Bid submitted by the Prevailing Bidder.

6. The Proposed Purchaser shall be entitled to the Break-up Fee of $5,000,000 and the Expense Reimbursement up to $500,000 which shall be paid in accordance with Section 5.9(f) of the Purchase Agreement on the terms and subject to the conditions set forth in the Purchase Agreement. The Break-up Fee and Expense Reimbursement shall be

-6-

payable as allowed administrative expense claims arising in the Debtors' Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code. If payment of the Break-up Fee and Expense Reimbursement is required under the terms of the Purchase Agreement, the Trustee is authorized to take all necessary steps and directed, without need for any application, motion or further order of this Court, to pay to the Proposed Purchaser the Break-up Fee and the Expense Reimbursement upon the terms set forth in the Purchase Agreement.

7.       Solely for purposes of determining a Prevailing Bid, the full amount of the Break-up Fee and Expense Reimbursement potentially payable shall be added to any overbid submitted by the Proposed Purchaser. The Proposed Purchaser, if it so chooses, may include as a credit and have added to the aggregate amount of any overbid it submits at the Auction, all or a portion of the Breakup Fee and Expense Reimbursement potentially payable to it. Participation in the Auction (or lack thereof) does not in any way limit or affect the Proposed Purchaser's right to receive the Breakup Fee and Expense Reimbursement on the terms and conditions set forth in the Purchase Agreement.

## SALE HEARING AND OBJECTIONS TO THE SALE

8.       The Court shall hold the Sale Hearing on [_____ _____, 2011] at [_____.M.] (Eastern time), or such other date and time as may be convenient to the Court, or as may be announced at the Sale Hearing without further notice.

9.       To be considered by the Court, any objections to the Sale of the Company Interest to the Proposed Purchaser or the Prevailing Bidder or to the Purchase Agreement shall (a) be in writing, (b) conform to the Bankruptcy Rules and the Local Rules, (c) set forth the name of the objecting party, the nature and amount of any claims or interest held or asserted against the Debtors' estates or their properties, the basis for the objection and the specific grounds therefor and (d) be filed with the Court and served on the following (collectively, the "Objection Notice

-7-

Parties") (i) the United States Trustee; (ii) counsel for the Trustee, Fox Rothschild LLP, 2000 Market Street, Twentieth Floor, Philadelphia, Pennsylvania 19103, Attention: Michael Menkowitz, Esq.; (iii) Cozen & O'Connor LLP, 1900 Market Street, Philadelphia, Pennsylvania 19103, Attention: Anna M. McDonough; and (iv) counsel for the Proposed Purchaser, Bass Berry & Simms, 150 Third Avenue South, Ste. 2800, Nashville, TN 37201, Attention: Leigh Walton; Leon Barson, Pepper Hamilton LLP, 3000 Two Logan Square, 18th and Arch Streets, Philadelphia, Pennsylvania 19103; and Michael Custer, Pepper Hamilton LLP, 1313 N. Market Street, Suite 5100, Wilmington, Delaware 19081, so as to be received no later than **5:00 P.M. (Eastern time) on [_____, 2011]** (the "Sale Objection Deadline").

10.     Any entity that fails to file and serve its objection before the expiration of the Sale Objection Deadline and otherwise in accordance with this Order shall be prohibited from asserting at the Sale Hearing or at any time thereafter any objection to the Motion or the consummation and performance of the Sale as contemplated by the terms of the Purchase Agreement (or by the terms of the purchase agreement submitted by the Prevailing Bidder), including the transfer of the Company Interest free and clear of all Encumbrances (other than Permitted Encumbrances).

11.     If the Trustee receives a Qualified Bid from a Qualified Bidder other than the Proposed Purchaser, the Trustee shall conduct an Auction commencing at 10:00 A.M. (Eastern Time) on [_____, 2011] at the offices of Cozen & O'Connor LLP, 1900 Market Street, Philadelphia, Pennsylvania 19103, or such other time or place as the Trustee, at least two (2) business days before the Auction, notifies all Qualified Bidders who have submitted Qualified Bids. The Trustee shall conduct an open Auction on the record, recorded by a court

-8-

reporter. Each Qualified Bidder participating at the Auction shall confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

## ADDITIONAL PROVISIONS

12. The Purchase Agreement and any exhibits and schedules thereto (collectively, the "Purchase Agreement Documents") may be amended, modified or supplemented, or the provisions thereof waived, in accordance with the terms of the Purchase Agreement without further order of this Court or notice thereof to any party; provided, however, that the Trustee shall provide notice to the U.S. Trustee of any amendment, modification, supplement or waiver to any Purchase Agreement Documents that has the effect of making the terms and conditions of such Purchase Agreement Documents materially more burdensome or materially less favorable to the Trustee. The U.S. Trustee shall have three (3) business days from the date of such notice to object in writing to such amendment, modification, supplement or waiver, and upon any such timely written objection, such amendment, modification, supplement or waiver shall only be permitted pursuant to an order of this Court.

13. The failure to include or reference in this Order any particular provisions of the Bidding Procedures shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

14. This Court shall retain exclusive jurisdiction to interpret, construe, enforce and implement the terms of this Order and grant any remedy, at law or equity, as the circumstances require.

15. Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after the entry hereof and shall be effective and enforceable immediately upon signature hereof.

-9-

16.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated: _____, 2011
        Wilmington, Delaware

_____  _____
The Honorable Brendan L. Shannon
United States Bankruptcy Judge

PH1 2771514v1 03/18/11

# Exhibit A

## BIDDING PROCEDURES

The bidding procedures set forth below (the "Bidding Procedures")[1] shall govern the auction and proposed sale (the "Sale") of all of SJ Medical Center Management, LLC ("SJMCM")'s right, title and interest in and to a 78.2% membership interest in SJ Medical Center, LLC (the "Company") (the "Company Interest"). The Company is the majority owner and operator of St. Joseph's Medical Center, Houston, Texas (the "Hospital"). Unless otherwise defined herein, capitalized terms are used herein as defined in the Asset Purchase Agreement, dated as of [          ] (as amended, together with the exhibits and schedules thereto, the "Purchase Agreement"), between Iasis Healthcare LLC (the "Proposed Purchaser") and Alfred T. Giuliano (the "Trustee" or the "Seller"), Chapter 7 Trustee for the estate of SJMCM.

On [          ], the Bankruptcy Court issued an order approving, among other things, these Bidding Procedures (the "Bidding Procedures Order"). The Bidding Procedures Order requires the Trustee to proceed on the following time table:

- **Accept Preliminary Bid Documents until 5:00 p.m. (Eastern time) on [          ];**

- **Assist Potential Bidders in conducting their due diligence investigations until 12:00 noon (Eastern time) on [          ];**

- **The deadline to for Potential Bidders to submit accept Qualified Bids to be eligible to bid at the Auction is 12:00 noon (Eastern time) on [          ];**

- **Conduct an Auction, if necessary, and select the Prevailing Bidder at 10:00 a.m. (Eastern time) on the date that is two days before the scheduled Sale Hearing at the offices of Cozen & O'Connor LLP, 1900 Market Street, Philadelphia, Pennsylvania 19103, or such other place as the Trustee, at least two business days before the Auction, notifies all Qualified Bidders who have submitted Qualified Bids; and**

- **Seek approval of the Sale to the Prevailing Bidder at a hearing before the United States Bankruptcy Court for the District of Delaware on [          ] at [    ].m. (Eastern time) (the "Sale Hearing").**

## The Stalking Horse Bid

A copy of the Purchase Agreement is available by contacting Trustee's counsel at Fox Rothschild LLP, 2000 Market Street, Tenth Floor, Philadelphia, Pennsylvania 19103, Attention: Michael Menkowitz, Esq. and Joshua T. Klein, Esq., (215) 299-2000 (the "Trustee's Counsel"), or on the Internet at http://www.foxrothschild.com/.

Under the terms of the Purchase Agreement, the Proposed Purchaser is a Qualified Bidder, and the bid submitted by the Proposed Purchaser as set forth in the Purchase Agreement (the "Stalking Horse Bid"), which is a Qualified Bid. The Stalking Horse Bid will terminate in accordance with the terms of the Purchase Agreement if the Stalking Horse Bid is not the Prevailing Bid. The Proposed Purchaser shall be a party in interest in the bankruptcy cases of

Hospital Partners of America, Inc., *et al.*, with respect to all matters concerning the Bidding Procedures and the Auction.

## Potential Bidders

Any person seeking to seeking to become a Qualified Bidder under the Bidding Procedures must deliver to the Trustee, c/o Michael Menkowitz, Esquire, Fox Rothschild LLP, 2000 Market Street, 20th Floor, Philadelphia, Pennsylvania 19103 and Anna M. McDonough, Cozen & O'Connor LLP, 1900 Market Street, Philadelphia, Pennsylvania 19103 so as to be received no later than 5:00 P.M. (Eastern time) on [_____], 2011, the following documents (the "Preliminary Bid Documents"):

(i) an executed confidentiality agreement in form and substance satisfactory to the Trustee that is no less favorable to the Trustee or more favorable to the person than the confidentiality agreement executed by the Proposed Purchaser, except that the Trustee's disclosure of the person's interest, proposal and identity shall be permitted under such confidentiality agreement; and

(ii) written proof of the person's financial and other capacity to consummate the Sale within the time set forth for the Closing in the Purchase Agreement in form and substance satisfactory to the Trustee in his sole discretion, including such financial and other information setting forth such person's ability to provide adequate assurance of future performance to the non-Debtor parties under the Management Agreement;

Within two business days after a person delivers complete Preliminary Bid Documents, the Trustee shall determine, and shall notify such person, whether such person has submitted acceptable Preliminary Bid Documents so that such person may conduct due diligence (such person so designated as eligible by the Trustee, a "Potential Bidder"). Any person that does not deliver the Preliminary Bid Documents by 5:00 P.M. (Eastern time) on [_____], 2011 is not eligible to be a Qualified Bidder, conduct due diligence or participate in the Auction.

Within two business days after a person delivers complete Preliminary Bid Documents, the Trustee shall determine, and shall notify such person, whether such person has submitted acceptable Preliminary Bid Documents so that such person may conduct due diligence (such person so designated as eligible by the Trustee, a "Potential Bidder"). Any person that does not deliver the Preliminary Bid Documents by 5:00 P.M. (Eastern time) on [_____] is not eligible to be a Qualified Bidder, conduct due diligence or participate in the Auction.

A Potential Bidder that desires to become a Qualified Bidder shall deliver a written copy of its Qualified Bid (as defined below) to (i) the Trustee, c/o Michael Menkowitz, Esquire, Fox Rothschild LLP, 2000 Market Street, 20th Floor, Philadelphia, Pennsylvania 19103 and Anna M. McDonough, Esquire, Cozen & O'Connor LLP, 1900 Market Street, Philadelphia, Pennsylvania 19103; and (ii) counsel to the Proposed Purchaser, c/o Paul Jennings, Bass, Berry & Sims PLC, 150 Third Avenue South, Suite 2800, Nashville, Tennessee 37201; Leon Barson, Pepper Hamilton LLP, 3000 Two Logan Square, 18th and Arch Streets, Philadelphia, Pennsylvania

2

19103; and Michael Custer, Pepper Hamilton LLP, 1313 N. Market Street, Suite 5100, Wilmington, Delaware 19081 (collectively, the "Notice Parties") so as to be received no later than [_____] (Eastern time), on [_____], 2011. (the "Bid Deadline"). Only Potential Bidders who submit Qualified Bids before the Bid Deadline are eligible to bid at the Auction.

The Trustee may (i) at any time require a Potential Bidder to provide additional evidence of its financial or other ability to consummate a Sale and (ii) based on the additional evidence provided, exclude any Potential Bidder from conducting a due diligence investigation or otherwise participating in the Auction.

Interested bidders requesting information about the qualification process should contact Trustee's Counsel.

## Due Diligence

Only Potential Bidders and the Proposed Purchaser may conduct due diligence. Potential Bidders desiring to conduct due diligence should contact Trustee's Counsel. The Trustee and his advisors may not furnish any information of any kind whatsoever relating to the Company Interest to any person that is not a Potential Bidder. The Trustee and his advisors shall coordinate the efforts of all Potential Bidders and the Proposed Purchaser in conducting a due diligence investigation in connection with a potential bid. In connection with the Potential Bidder's due diligence, the Trustee shall provide the Potential Bidder access to the documents and information which were made available in the virtual data room to the Proposed Purchaser. The Potential Bidders and the Proposed Purchaser may not conduct any due diligence after [_____](Eastern Time), [_____], 2011. In the event that any due diligence material has not previously been provided to the Proposed Purchaser, the Trustee shall simultaneously make such material available to the Proposed Purchaser.

## Form and Content of a Qualified Bid

A Potential Bidder that desires to become a Qualified Bidder shall deliver a written copy of its Qualified Bid (as defined below) to (i) the Trustee, c/o Michael Menkowitz, Esquire, Fox Rothschild LLP, 2000 Market Street, 20th Floor, Philadelphia, Pennsylvania 19103 and Anna M. McDonough, Esquire, Cozen & O'Connor LLP, 1900 Market Street, Philadelphia, Pennsylvania 19103; and (ii) counsel to the Proposed Purchaser, c/o Paul Jennings, Bass, Berry & Sims PLC, 150 Third Avenue South, Suite 2800, Nashville, Tennessee 37201; Leon Barson, Pepper Hamilton LLP, 3000 Two Logan Square, 18th and Arch Streets, Philadelphia, Pennsylvania 19103; and Michael Custer, Pepper Hamilton LLP, 1313 N. Market Street, Suite 5100, Wilmington, Delaware 19081 (collectively, the "Notice Parties") so as to be received no later than [_____] (Eastern time), on [_____], 2011. (the "Bid Deadline"). Only Potential Bidders who submit Qualified Bids before the Bid Deadline are eligible to bid at the Auction.

A "Qualified Bid" is a bid from a Potential Bidder received by the Notice Parties before the Bid Deadline that:

(i)     is formal, binding and unconditional, except those conditions expressly set forth in the asset purchase agreement to be delivered by such Potential Bidder;

(ii)    includes the following documents (each, a "Required Bid Document"):

   (A)   current audited financial statements of the Potential Bidder for the Potential Bidder's last fiscal year (or, if the Potential Bidder is an entity created to purchase the Company Interest, such financial statements from the Potential Bidder's parent or other appropriate affiliated company), and current unaudited financial statements for any subsequent fiscal quarter; written evidence of a financing commitment (not subject to any conditions other than those expressly set forth in the asset purchase agreement described in clause (B) below and the satisfaction of customary documentation conditions) or other source of cash, and tables setting forth the sources and uses of funds for the proposed Sale, that demonstrate such Potential Bidder's financial and other capability to close a Sale and to provide adequate assurance of future performance under any executory contracts being assumed and assigned, in all cases which is in form and substance acceptable to the Trustee in his sole discretion (the "Financial Documents");

   (B)   an executed asset purchase agreement substantially in the same form of the Purchase Agreement and otherwise no less favorable to the Trustee (and no more burdensome or conditional) than the Purchase Agreement, together with a copy of the asset purchase agreement submitted by such Potential Bidder marked to show changes to the Purchase Agreement, providing for the purchase of the Company Interest as contemplated by the Purchase Agreement;

   (C)   a letter (i) stating that the Potential Bidder has read and agrees to be bound by the terms and conditions of these Bidding Procedures, (ii) setting forth contact information for the Potential Bidder, its authorized representative and its counsel, and as to each, such person's full name, company or firm, physical address or other address at which such person receives overnight deliveries, telephone number, facsimile number and email address, (iii) stating that the Potential Bidder has not engaged in any collusion with respect to its bid, and (iv) acknowledging that (x) the Potential Bidder has had an opportunity to examine the Debtors' assets and liabilities before making its offer, (y) the Potential Bidder has relied solely upon its own independent review, investigation or inspection of any documents in making its bid and (z) the Potential Bidder did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding SJMCM's assets or liabilities, or the completeness of any information provided in connection with the Trustee's implementation of

4

the Bidding Procedures, in each case except as expressly stated in such letter.

    (D)    A copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed.

    (iii)    is for an aggregate purchase price payable to the Trustee equal to at least the Stalking Horse Bid plus $8,000,000 (the "Initial Overbid Amount"), which Initial Overbid Amount must be payable in cash at closing;

    (iv)    remains open until the earlier of (x) the date of the closing of the Sale and (y) [        , 2011];

    (v)    is not subject to any condition precedent to closing that is not contained in the Purchase Agreement, including obtaining financing, any internal or equity holder approval contingency, the outcome of unperformed due diligence, or any bid protections (including a breakup fee, termination fee, expense reimbursement or similar type of payment);

    (vi)    the Trustee determines is reasonably likely (based on the Financial Documents, the Potential Bidder's history and experience in consummating similar transactions or other considerations) to be consummated if selected as the Prevailing Bid; and

    (vii)    includes a minimum good faith deposit in the form of a cashier's check, wire transfer or other immediately available funds in an amount equal to at least $7,000,000.

The Trustee shall notify any Potential Bidder and the Proposed Purchaser promptly upon the Trustee's determination of whether its bid is a Qualified Bid. Any Potential Bidder so notified shall be a "Qualified Bidder" and its bid shall be a "Qualified Bid" for purposes of these Bidding Procedures and the Auction. The Proposed Purchaser's Purchase Agreement is deemed a Qualified Bid.

Each Potential Bidder, whether or not submitting a Qualified Bid, is deemed to have submitted to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters related to bids, the Auction and the Sale.

## Auction and Overbids

The Trustee shall conduct an auction (the "Auction") if and only if one or more Qualified Bids in addition to the Stalking Horse Bid have been received. The Auction shall commence at 10:00 A.M. (Eastern time) on the date that is two days before the scheduled Sale Hearing at the offices of Cozen & O'Connor, 1900 Market Street, Philadelphia, Pennsylvania 19103, or such other time or place as the Trustee, at least two business days before the Auction, notifies all

5

Qualified Bidders who have submitted Qualified Bids. Only a Qualified Bidder who has submitted a Qualified Bid may participate at the Auction. At least 24 hours before the Auction, each Qualified Bidder who has submitted a Qualified Bid must inform the Trustee (and the Trustee shall advise the Proposed Purchaser) whether it intends to participate in the Auction. A Qualified Bidder participating in the Auction may appear at the Auction only in person or through a representative who is duly authorized to bind the Qualified Bidder to any overbid. Based upon the terms of the Qualified Bids submitted by the Qualified Bidders, and such other information as the Trustee determines is relevant, one business day before the Auction commences, the Trustee shall notify in writing (including the Proposed Purchaser) the Qualified Bidders participating in the Auction which Qualified Bid the Trustee has determined to be the highest or otherwise best Qualified Bid. In addition to the foregoing, the Auction shall be conducted as follows:

(i)    the Trustee, with the assistance of his advisors, shall conduct an open Auction on the record, recorded by a court reporter and calling for incremental bids from the Qualified Bidders participating in the Auction over the Initial Overbid Amount, with minimum overbid increments being in an amount not less than $2,500,000 (the "Overbid Increment");

(ii)   at the Qualified Bidder's request, Qualified Bidders may caucus privately among themselves (but not with other Qualified Bidders) at any time, with or without the participation of the Trustee and his advisors, but the Trustee may impose uniform reasonable time restrictions on such caucuses so that the Auction may continue and be completed in an orderly and timely manner. Any Qualified Bidder who fails to make a bid within any time period established by the Trustee is deemed to have affirmatively withdrawn from the Auction and shall no longer participate in the Auction;

(iii)  Qualified Bidders may increase their bids at the Auction, in accordance with the conditions set forth herein, as many times as they wish; but a Qualified Bidder that wishes to submit a bid that is less than the minimum incremental amount of $2,500,000 may do so, but only by announcing that such bid is such Qualified Bidder's highest or otherwise best bid and, if topped, such Qualified Bidder shall no longer participate in the Auction. Bidding among any remaining Qualified Bidders shall continue to be in $2,500,000 Overbid Increments; and

(iv)   the Proposed Purchaser, if it so chooses, may include as a credit and have added to the aggregate amount of any overbid it submits at the Auction, all or a portion of the Breakup Fee and Expense Reimbursement potentially payable to it. Participation in the Auction (or lack thereof) does not in any way limit or affect the Proposed Purchaser's right to receive the Breakup Fee and Expense Reimbursement on the terms and conditions set forth in the Purchase Agreement.

## Selection of Prevailing Bid and Bidder

Simultaneously with the conclusion of the Auction, the Trustee, after consulting with his advisors, shall (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale, and (ii) identify the highest or otherwise best offer (the "Prevailing Bid"; the Qualified Bidder having submitted the Prevailing Bid, the "Prevailing Bidder") and the next highest or otherwise best offer (the "Back-Up Bid"; the Qualified Bidder having submitted the Back-Up Bid, the "Back-Up Bidder"). The Trustee shall determine the Prevailing Bid and the Back-Up Bid by considering, among other things, (i) the amount and form of consideration to be paid, (ii) the changes to and conditions contained in the asset purchase agreement (as compared to the Purchase Agreement), (iii) the extent to which such changes or conditions are likely to delay closing of the Sale, and the cost to the Debtors of such changes, conditions or delay, (iv) if applicable, the nature of the Qualified Bidder's financing commitment (including the conditions, if any, contained in such financing commitment) and (v) the Qualified Bidder's ability to close a Sale and the timing thereof. If no Auction is held, the Stalking Horse Bid shall automatically be the Prevailing Bid and the Proposed Purchaser shall automatically be the Prevailing Bidder.

In the event that Proposed Purchaser is designated as the Back-Up Bidder, all deposit moneys shall be immediately returned to the Proposed Purchaser, without setoff or deduction of any kind, and its Back-Up Bid shall be deemed terminated without further action, unless a closing under the Purchase Agreement has occurred by June 15, 2011, at 5:00 p.m. (ET) (the "Transaction Deadline"); provided, however, that the Proposed Purchaser, may, in its sole discretion, elect in writing prior to the Transaction Deadline to remain as the Back-Up Bidder until August 1, 2011 at 5:00 p.m. (ET), after which time all deposit moneys shall be immediately returned to the Proposed Purchaser, without setoff or deduction of any kind, and its Back-Up Bid shall be deemed terminated without further action.

To the extent not inconsistent with the terms of the Purchase Agreement, if for any reason the Prevailing Bidder fails to consummate timely the transactions contemplated by the Prevailing Bid and the Sale Approval Order, or if the conditions to closing the transaction as set for the Purchase Agreement are unable to be met in connection with such Prevailing Bidder, Trustee may retain the Prevailing Bidder's deposit as liquidated damages for the SJMCM estate, except as otherwise provided in Section 11.16 of the Purchase Agreement if the Proposed Purchaser is the Prevailing Bidder, and may, at the Trustee's sole option, declare the Back-Up Bidder as having submitted the highest or otherwise best bid and consummate the Back-Up Bid without further approval by the Bankruptcy Court.

## Sale Hearing

The Trustee will cause to be served, within five (5) business days after issuance of the Bidding Procedures Order, by first-class mail, postage prepaid, (i) notice of the Bid Deadline, Auction and Sale Hearing substantially in the form annexed hereto as Exhibit 2 (the "Notice of Bid Deadline, Auction, and Sale Hearing"), (ii) the Bidding Procedures Order including the Bidding Procedures attached thereto as Exhibit 1 and (iii) the Motion (the Notice of Bid

Deadline, Auction, and Sale Hearing, the Order and the Bidding Procedures, the Motion, collectively, the "Sale Package"), upon: (a) all potential buyers previously identified or solicited by the Trustee and/or Stroudwater and any additional parties who have previously expressed an interest to the Trustee or Stroudwater in potentially acquiring the Company Interest, (b) other potentially interested parties identified by the Trustee or his advisors; (c) the Office of the United States Trustee, (d) counsel for the Proposed Purchaser, (e) the Debtors' known creditors, (f) all parties in interest who have requested notice under Bankruptcy Rule 2002, (g) the Notice Parties, (h) all parties who are known to possess or assert a Lien, claim, encumbrance or interest in or upon any of the Company Interest, (i) all applicable federal, state and local regulatory or taxing authorities or recording offices which are known by the Trustee to have an interest in the relief requested in the Motion, and (j) physician investors holding the remaining interest in the Company. Due to the size and complexity of this matter, only those parties in (a) - (d) and (f) - (j) will be sent the Sale Package. Those parties in (e) will receive only the Notice of Bid Deadline, Auction, and Sale Hearing.

Further, the Trustee will publish a modified publication version of the Notice of Bid Deadline, Auction, and Sale Hearing in *The Wall Street Journal* (National Edition), in accordance with the Order Under 11 U.S.C. §§ 105 and 363 and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedures (I) Approving Bidding Procedures, and (II) Scheduling Bid Deadline, Auction Date and Sale Hearing and Approving Notice Thereof.

To be considered by the Court, any objections to the Sale of the Company Interest to the Proposed Purchaser or the Prevailing Bidder or to the Purchase Agreement shall (a) be in writing, (b) conform to the Bankruptcy Rules and the Local Rules, (c) set forth the name of the objecting party, the nature and amount of any claims or interest held or asserted against the Debtors' estates or their properties, the basis for the objection and the specific grounds therefore and (d) be filed with the Court and served on the following (collectively, the "Objection Notice Parties") (i) the United States Trustee; (ii) counsel for the Trustee, Fox Rothschild LLP, 2000 Market Street, Twentieth Floor, Philadelphia, Pennsylvania 19103, Attention: Michael Menkowitz, Esq.; (iii) Cozen & O'Connor LLP, 1900 Market Street, Philadelphia, Pennsylvania 19103, Attention: Anna M. McDonough, and (iv) counsel for the Proposed Purchaser, Bass Berry & Simms, 150 Third Avenue South, Ste. 2800, Nashville, TN 37201, Attention: Leigh Walton; Leon Barson, Pepper Hamilton LLP, 3000 Two Logan Square, 18th and Arch Streets, Philadelphia, Pennsylvania 19103; and Michael Custer, Pepper Hamilton LLP, 1313 N. Market Street, Suite 5100, Wilmington, Delaware 19081.

The Trustee requests that any entity that fails to file and serve its objection before the expiration of the Sale Objection Deadline (as established in the entered Bidding Procedures Order) and otherwise in accordance with this Order shall be prohibited from asserting at the Sale Hearing or at any time thereafter any objection to the Motion or the consummation and performance of the Sale as contemplated by the terms of the Purchase Agreement (or by the terms of the purchase agreement submitted by the Prevailing Bidder), including the transfer of the Company Interest free and clear of all Encumbrances[1] (other than Permitted Encumbrances).

---

[1] Any capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Purchase Agreement.

## Failure to Consummate the Prevailing Bid

If for any reason the Prevailing Bidder fails to consummate timely the transactions contemplated by the Prevailing Bid and the Sale Approval Order, or if the conditions to closing the transaction as set for the Purchase Agreement are unable to be met in connection with such Prevailing Bidder, Trustee may retain the Prevailing Bidder's deposit as liquidated damages for the SJMCM estate, except as otherwise provided in Section 11.16 of the Purchase Agreement if the Proposed Purchaser is the Prevailing Bidder, and may, at the Trustee's sole option, declare the Back-Up Bidder as having submitted the highest or otherwise best bid and consummate the Back-Up Bid without further approval by the Bankruptcy Court.

## Procedures With Respect to Deposits

To the extent not inconsistent with the terms of the Purchase Agreement, the Trustee shall return any deposit and shall terminate any Qualified Bid promptly after the Bankruptcy Court approves the Prevailing Bid and the Back-Up Bid and enters the Sale Approval Order, except for a Qualified Bid and a deposit submitted by (i) the Prevailing Bidder, (ii) the Back-Up Bidder or (iii) any bidder that has forfeited its deposit as set forth below. The Trustee shall return any Back-Up Bid deposit and shall terminate the Back-Up Bid promptly after the Trustee closes a transaction with the Prevailing Bidder. A Qualified Bidder forfeits its deposit if the bidder (i) withdraws or modifies (in a manner reasonably determined by the Trustee to be less favorable) its Qualified Bid before the Bankruptcy Court approves the Prevailing Bid or (ii) is the Prevailing Bidder and (a) modifies or withdraws its Qualified Bid without the Trustee's consent or (b) materially breaches the terms and conditions of its Qualified Bid, except as otherwise provided in Section 11.16 of the Purchase Agreement if the Proposed Purchaser is the Prevailing Bidder.

## Reservation of Rights

The Trustee may: (i) determine whether a person is eligible to be a Potential Bidder, (ii) determine whether a Potential Bidder is eligible to be a Qualified Bidder, (iii) determine whether a Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal, (iv) reject any bid (other than the Stalking Horse Bid) that is (a) inadequate or insufficient, (b) not submitted in conformity with the requirements of the Bidding Procedures Order or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the SJMCM and its estate, (v) impose additional terms and conditions with respect to any or all Qualified Bidders that are not inconsistent with these Bidding Procedures and any order of the Bankruptcy Court, (vi) extend the deadlines set forth herein, subject to the terms of the Purchase Agreement and the Bidding Procedures Order, (vii) modify the Auction and Bidding Procedures to promote the greatest recovery to the SJMCM estate in a manner not materially inconsistent with the Bidding Procedures Order, subject to the terms of the Purchase Agreement, and (viii) adjourn or cancel the Auction if no Qualified Bids have been timely submitted or adjourn the Sale Hearing in open court without further notice, subject to the terms and conditions of the Purchase Agreement. Notwithstanding the foregoing, to the extent that any of the foregoing directly impacts the protections granted to the Proposed Purchaser in the Bidding Procedures and

9

the Purchase Agreement, the same shall be subject to the Proposed Purchaser's prior written consent.

PH1 2771638v1 03/18/11