IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| HOSPITAL PARTNERS OF AMERICA, | ) | Case No. 08-12180 (BLS) |
| INC. *et al.*, | ) | |
| | ) | |
| Debtors. | ) | Re: Docket Nos.: 930; 931; 960; 963 |
| | ) | |

**OPINION**[1]

Before the Court are final fee applications (hereinafter, the "Fee Applications") of Fox Rothschild LLP and Giuliano Miller & Company, LLC for services rendered to the Chapter 7 Trustee in this case. The United States Trustee (the "UST") has objected to compensation for these professionals for services related to avoidance actions on the ground that these fees exceed the recoveries realized on account of those avoidance actions. After an evidentiary hearing, for the reasons stated below, the U.S. Trustee's objection is overruled and the Fee Applications are approved.

**BACKGROUND**

On September 24, 2008, Hospital Partners of America and its affiliates filed Chapter 11 petitions [Docket No. 1]. On November 20, 2008, the Court converted the cases from Chapter 11 to Chapter 7 and appointed Alfred Giuliano (hereinafter the "Chapter 7 Trustee") as the trustee responsible for the administration of these cases. The Chapter 7 Trustee retained several professionals to assist him with the liquidation process, including the two firms whose fees are at issue here: Fox Rothschild LLP, his bankruptcy counsel, and Giuliano Miller & Company, LLC,

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7052, 9014(c).

1

his accountant (collectively the "Professionals"). The Chapter 7 Trustee is a principal in Giuliano Miller & Company.

On November 19, 2018, after the liquidation process was complete, the Chapter 7 Trustee filed his final report and application for compensation [Docket No. 957]. The record reflects that the expected distribution to creditors realized by the liquidation process was unusually high: the case ultimately has provided an almost 50% recovery for unsecured creditors. December 19, 2018 Hearing Transcript at 26-29 [Docket No. 974] ("Dec. 19 Transcript"). On December 6, 2018, the UST filed an Omnibus Objection to Professional Fees (the "Objection") [Docket No. 960] by which he requested that the Court reduce the fees sought by the Professionals for services they rendered in pursuit of preferences and fraudulent conveyance actions. The Professionals timely filed a response on December 16, 2018 ("Response") [Docket No. 963], and an evidentiary hearing on the Fee Applications and the UST's Objection was held on December 19, 2018, at which time the Court heard testimony and admitted documentary evidence into the record. Following that hearing, the Court took the matter under advisement.

The UST has forwarded two main arguments to support its contention that the Court should disallow some of the Professionals' fees. First, the UST argues that the fees should be reduced because they are substantially disproportionate to the cash recovery produced by the relevant services. Objection at ¶ 17 ("The fees that GMCO and Fox are seeking for liquidating avoidance actions are not reasonable because they consume 163% of the proceeds realized from those actions."). To support this argument, the UST notes that the cash recovery for all avoidance actions totals approximately $273,625, and that the fees identified in the Fee Applications associated with this recovery were $445,477, or approximately $171,852 more than the cash recovery. *Id*. at ¶¶ 12-13.

Second, the UST contends that the fees should be reduced because the Chapter 7 Trustee and his Professionals failed to "analyze…avoidance actions as they proceeded, and [] abandon them at any point that they appeared likely to be a net drain on the estate." *Id*. at ¶ 32. In other words, the UST argues that the fees should be reduced because the Chapter 7 Trustee had a duty to perform a reasonable cost-benefit analysis of avoidance actions and, instead "apparently failed to perform that diligence or to discern flaws in the estate's causes of action…" *Id*.

The Professionals respond that their fees are reasonable, given both the objective recovery obtained as a result of the avoidance actions, Response at ¶ 35, and because the Professionals exercised reasonable judgment at the time regarding which actions to pursue, and to what extent to pursue those actions. *See, e.g.*, Response at ¶ 28. This matter has been fully briefed and argued, and is ripe for decision.

## JURISDICTION AND VENUE

Venue in this District and Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Jurisdiction over this matter is proper pursuant to 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## DISCUSSION

**A.    Legal Standard**

Under Bankruptcy Code § 330, the Court is authorized to award compensation to trustees and the professionals hired to assist them in the administration of the estate:

> …the court may award to a trustee…or a professional person employed under section 327 or 1103—
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee… professional person, or attorney and by any paraprofessional person employed by any such person….

3

11 U.S.C. § 330(a)(1). The Court is not required to award all of the compensation requested. Instead, the Court may "award compensation that is less than the amount of compensation that is requested." 11 U.S.C. § 330(a)(2). That section also provides that:

> [i]n determining the amount of reasonable compensation to be awarded … the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, *including*…(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title…

11 U.S.C. § 330(a)(3).

In addition to this mandate for the Court to consider "all relevant factors," the Code also specifically directs the Court *not* to award compensation for certain services:

> (4)(A)[T]he court shall not allow compensation for—
> (i) unnecessary duplication of services; or
> (ii) services that were not—
> (I) reasonably likely to benefit the debtor's estate; or
> (II) necessary to the administration of the case.

11 U.S.C. § 330(a)(4)(A). It is significant that the Code requires courts to take into account "all relevant factors, including" the factors listed in the statute. 11 U.S.C. § 330(a)(3). This language contemplates the Court's exercise of broad discretion to determine which factors are relevant to the compensation of professionals for services rendered in a particular case. *See In re Haimil Realty Corp.*, 579 B.R. 19, 27 (Bankr. S.D.N.Y. 2017).

As noted above, § 330(a)(4)(A) limits that discretion: the Court "shall not" allow certain types of compensation. 11 U.S.C. § 330(a)(4)(A). The Third Circuit has made it clear that § 330(a)(4)(A) does not go so far as to require the Court to disallow fees simply because the estate ultimately does not profit from the services of the professionals in question. *In re Top Grade Sausage, Inc.*, 227 F.3d 123, 132 (3d Cir. 2000) (abrogated on other grounds by *Lamie v. U.S. Trustee*, 540 U.S. 526 (2004) (cited with approval by *In re Woerner*, 783 F.3d 266, 275 (5th

4

Cir. 2015)). Instead, for services to be compensable under § 330(a)(4)(A), they must only have been "reasonably likely to benefit the debtor's estate" *at the time they were rendered*, not in "hindsight." *In re Top Grade Sausage, Inc.*, 227 F.3d at 132; *see also* 3 Collier on Bankruptcy P 330.03 (16th 2018) ("Rejecting an actual-material-benefit standard, a number of courts, including the Courts of Appeals for the Second, Third, Fifth and Ninth Circuits, have determined that section 330 permits a court to compensate a professional…for services that were objectively reasonable at the time they were rendered."). As a practical matter, bankruptcy professionals are not guarantors of the success of a particular theory, proceeding, or strategy.

      The standards set forth in § 330 reflect the realities of legal practice, where trustees or professionals often act without complete information about what the ultimate results of those actions might be. The pursuit of preference actions, specifically, is an arena in which professionals do not have perfect information. Rather the contrary: professionals must conduct both a preliminary review and an ongoing analysis in order to determine which actions to reasonably pursue, and which to abandon. Experience teaches that the potential value of pursuing those preference actions depends on many factors. Just one of those many factors—one which is important in this situation—is the response of a given preference counterparty to a demand letter or complaint. For example, a preference counterparty may have a defense to a given preference action that is not immediately apparent to the professionals pursuing that preference action. Alternatively, some defendants may be particularly eager to settle in order to steer clear of a potentially burdensome preference litigation. And perhaps most important, the Trustee and his

Professionals must make and revisit assessments regarding the ultimate collectability of any judgment or settlement.

It is important to hold professionals responsible for the fees that they incur and ensure that trustees work for the benefit of the estate, instead of pursuing actions that "primarily benefit the trustee or the professionals." The Handbook for Chapter 7 Trustees (Effective Oct. 1, 2012) Section 4.A. However, when considering whether those fees are reasonable, they must be "evaluated pursuant to the standards set forth in § 330(a)(4)(A) and not by some heightened standard or by hindsight." *In re Top Grade Sausage, Inc.*, 227 F.3d at 132. In other words, there is no bright line rule that requires this Court to disallow fees for services rendered when the economic outcome of those services turns out to be disappointing. Instead, the Court must determine whether the professional compensation requested is reasonable based on the facts and circumstances of the particular case. *C.f. In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 848 (3d Cir. 1994) (describing a fact-intensive process for evaluating fee applications for paraprofessionals).

The Court may not allow compensation for services that were not "reasonably likely to benefit the debtor's estate" at the time the services were rendered, based on the information available at that time. *Top Grade Sausage, Inc.*, 227 F.3d at 132. That determination is not based on whether the services ultimately resulted in a material benefit for the estate, but instead, whether the services were objectively reasonable at the time the services were rendered. *Id.*; *see also In re APW Enclosure Sys., Inc.* 2007 WL 3112414, at *3-*4 (Bankr. D. Del. Oct. 23, 2007) (Walrath, J.) (holding that "an attorney should only proceed with a legal service if the potential benefit of the service, which takes into consideration the chances of success, outweighs the cost"); *In re Grasso*, 586 B.R. 110, 144 (Bankr. E.D. Pa. 2018) ("Generally speaking, this Court

must satisfy itself that the attorney's services were actual and necessary by determining whether, if at the time services were rendered, the attorney reasonably believed such services would benefit the estate.").

**B.     Analysis**

With this statutory framework laid out, the Court turns now to the issue at hand: determining whether the fees incurred for the services rendered to the Chapter 7 Trustee by Fox Rothschild LLP and Giuliano Miller & Company, LLC in pursuit of particular preference actions were reasonable and "reasonably likely" to benefit the estate. *Top Grade Sausage, Inc.*, 227 F.3d at 132. "The fee applicant has the burden of proving it has earned the fees it requests, and that the fees are reasonable." *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 261 (3d Cir. 1995). When determining whether a fee applicant has met that burden, the Court need not "become enmeshed in a meticulous analysis of every detailed facet of the professional representation," instead, the Court need only "correct reasonably discernible abuses…" *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d at 845 (citing *Lindy Bros. Builders, Inc. v. American Radiator & Std. Sanitary Corp.*, 540 F.2d 102, 116 (3d Cir.1976) (*en banc*)).

Looking to the statutory factors in § 11 U.S.C. § 330(a)(3), the Court finds that the Professionals have demonstrated skill and experience in the bankruptcy field and that a reasonable amount of time was spent on the services provided by the Professionals. 11 U.S.C. § 330(a)(3)(A), (D), (E). The Court further finds that those services were performed at market rates for such services, which are commensurate with the customary compensation charged by similarly skilled practitioners in non-bankruptcy matters. 11 U.S.C. § 330(a)(3)(B), (F); *see also In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d at 853–54. These findings are not directly challenged here by the UST.

The parties' briefing focused on 11 U.S.C. § 330(a)(4), which directs the Court not to allow compensation for "services that were not…reasonably likely to benefit the debtor's estate." 11 U.S.C. § 330(a)(4). Here, the record shows that the services rendered by the Professionals not only were "reasonably likely to benefit the debtor's estate," but they in fact actually did confer material benefits upon the estate. The record indicates that the Chapter 7 Trustee exercised considerable discretion in pursuing the avoidance actions in question. Mr. Menkowitz—a senior partner at Fox Rothschild with decades of experience in this practice—described the systematic approach undertaken by the Professionals:

> We have a very detailed chart for each adversary that shows contact with the defendant, discussions with the Trustee, settlement discussions, you know, what they've said in terms of their defenses. It's a very detailed chart.
>
> …
>
> For each adversary, the Trustee requires that we give him a full report when we're ready to present the defenses either to eliminate them or start a dialogue on settlement. And so, we lay out in detail what the defenses are, what the proposal is, what our recommendation is, and then the Trustee tells us how to proceed.

Dec. 19 Transcript at 25. According to Mr. Menkowitz's comprehensive testimony, about half of the avoidance actions were abandoned before a complaint was filed. *Id*. at 22. None of the avoidance actions were ultimately taken to trial. *Id*. at 25. The Chapter 7 Trustee, then, rather than "litigat[ing] every potential preference action" instead made a judgment whether "litigation would cost more than the expected return" and acted accordingly. *In re McLean Wine Co.*, 463 B.R. 838, 851 (Bankr. E.D. Mich. 2011). The testimony presented by the Chapter 7 Trustee, considered along with the various other materials provided to the Court, constitutes strong evidence of the selectiveness of this approach and the willingness of the Chapter 7 Trustee to abandon unfruitful avoidance actions. The information provided to the Court in support of the

Fee Applications strongly indicates objective reasonableness and would, standing alone, warrant approval of the Fee Applications.

However, even if the Court were to solely determine reasonableness by comparing the results of the Chapter 7 Trustee's preference actions to the fees charged for services related to those actions, the record supports a finding that the professional fees are actually far outweighed by the benefit to the estate accruing from these services. The record demonstrates that the cash recovery from particular avoidance actions does not encompass the entire potential "benefit [to] the debtor's estate" that was realized by the pursuit of the avoidance actions. *In re Top Grade Sausage, Inc.*, 227 F.3d at 132. While it is true that the direct cash recovery here is lower than the fees charged, that does not end the inquiry: both Mr. Menkowitz (on behalf of Fox Rothschild) and Mr. Giuliano (on behalf of Giuliano Miller) testified credibly to a number of significant economic benefits flowing from the preference action program. Dec. 19 Transcript at 26-29.

For example, Mr. Menkowitz testified in detail that settlement of the $130,000 preference action against a particular defendant (for no cash to the estate) "was a major component of" a broader settlement between that defendant and the estate. *Id*. at 27. That settlement included waiver of an approximately $24 million of an unsecured claim by that defendant. *Id*. Such a reduction in the unsecured claim pool was obviously of enormous benefit to the estate: indeed, the record indicates that negotiations spurred by pursuit of the preference led to the claim waiver that effectively boosted recoveries to a current projected distribution of nearly 50%. [Docket No. 956 at 105-13]. Mr. Menkowitz and Mr. Giuliano also testified that the preference program facilitated the discovery of an asset that was valued at approximately a million dollars. *Id*. at 27-28; 62. Finally, Mr. Menkowitz testified that all of the settlements included § 502(h) waivers, which also confer an economic benefit upon the estate. *Id*. at 28-29.

9

## CONCLUSION

It is not difficult for the Court to imagine a case that presents the circumstances the UST is concerned about:[2] the heedless pursuit of avoidance actions by a trustee or a postconfirmation Chapter 11 trust, incurring substantial professional expense for little or no return to the estate. But that is not this case.

Given the established facts of this case and the demonstration by the Professionals that they acted reasonably in determining which avoidance actions to pursue and how to pursue those actions, the Court overrules the UST's Objection [Docket No. 960]. The parties are requested to confer and submit orders consistent with the foregoing, approving the Fee Applications, within 7 days.

By the Court:

Dated: March 7, 2019

*[signature]*
BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE

---

[2] The Court notes with appreciation the UST's diligence in scrutinizing estate expenditures in furtherance of its statutory mandate.